**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0039n.06

No. 09-6483

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Jan 14, 2011**

LEONARD GREEN, Clerk

In re:  DANNY CHAMBERS,                          )
                                                 )
        **Movant.**                              )          **O P I N I O N**
                                                 )
_____ )

Before:  SILER, MOORE, and GRIFFIN, Circuit Judges.

        **KAREN NELSON MOORE, Circuit Judge.**  Danny Chambers ("Chambers"), a Kentucky

prisoner convicted of murder and sentenced to life imprisonment, seeks authorization from this

court, pursuant to 28 U.S.C. § 2244(b), to file a second or successive habeas petition with the district

court.  Chambers also moves to expand the record.  Because Chambers has not met the applicable

statutory requirements, we **DENY** Chambers's motion for authorization to file a second or

successive 28 U.S.C. § 2254 petition.  Accordingly, we also **DENY** as moot Chambers's motion to

expand the record.

## I.  BACKGROUND

        On November 23, 1992, Chambers was indicted by a grand jury in Lee County, Kentucky

on one count of murder.  The indictment charged that, on or about October 4, 1992, Chambers

intentionally caused the death of Larry Allen by shooting him with a pistol in violation of Kentucky

Revised Statute § 507.020.  Chambers pleaded not guilty to the murder charge and was tried by a

jury in May 1994.  The jury convicted Chambers of murder, but was unable to agree on an

appropriate penalty.  After the jury deadlocked, the trial court sentenced Chambers to life

imprisonment. Final judgment was entered on July 13, 1994. On November 22, 1995, the Kentucky Supreme Court affirmed Chambers's conviction. Chambers then unsuccessfully pursued state post-conviction relief.

On November 25, 1998, Chambers filed a habeas petition in federal court pursuant to 28 U.S.C. § 2254, raising various claims. The district court denied relief, but this court reversed and remanded for consideration of Chambers's claims of ineffective assistance of counsel. *Chambers v. Million*, 16 F. App'x 370, 374-75 (6th Cir. 2001). After an evidentiary hearing before a magistrate judge, the district court denied habeas relief, adopting the findings of the magistrate judge that Chambers's trial counsel was not ineffective. We affirmed.

Chambers now moves for an order authorizing the district court to consider a second or successive petition for a writ of habeas corpus. In his motion to file a second or successive habeas petition, Chambers claims that: 1) his trial was fundamentally unfair because two jurors discussed the case with non-jurors prior to the verdict, 2) the grand jury was not fair and impartial because the grand-jury foreperson, Elizabeth Hollon, was the wife of the prosecutor, Tom Hollon; and 3) the trial court violated his due-process rights and his right to a trial by jury under the Fourteenth and Sixth Amendments when the trial court sentenced him to life imprisonment after the jury deadlocked during the penalty phase of his trial. Chambers also moves to expand the record to include a CD-ROM of a recorded telephone conversation regarding the alleged juror misconduct.

Chambers has pursued these claims in state-court proceedings. On November 5, 2005, following the denial of his first habeas petition, Chambers filed a motion in the Lee Circuit Court

to correct, vacate, or set aside the judgment pursuant to Kentucky Rule of Civil Procedure ("CR") 60.02, arguing that the trial court erred in sentencing him to life imprisonment after the jury was unable to agree on a recommended sentence. The circuit court denied Chambers's CR 60.02 motion. The Kentucky Court of Appeals affirmed on the grounds that the sentencing error should have been raised in Chambers's direct appeal. In the alternative, the court held that, even if Chambers's claim had been properly brought via CR 60.02, Chambers offered no legal authority in support of his claim that the trial judge could not have sentenced him to the maximum available sentence without a jury recommending that sentence, and, furthermore, that he had not raised his claim within a "reasonable time." *Chambers v. Commonwealth*, No. 2006-CA-000607-MR, 2006 WL 3112914, at *2 (Ky. Ct. App. Nov. 3, 2006). On January 18, 2007, the Kentucky Supreme Court denied review.

On June 4, 2007, Chambers filed in state court a motion for a new trial pursuant to CR 60.02(e) or (f), claiming juror bias and misconduct during his trial, and arguing that he was unduly prejudiced because the grand-jury foreperson was the wife of the prosecutor. The circuit court denied the CR 60.02 motion. The Kentucky Court of Appeals affirmed, holding that the circuit court did not abuse its discretion when it determined that the claim of juror bias and misconduct was not brought within a reasonable time, and that, with respect to the grand-jury bias claim, Chambers had not shown that the indictment signed by the wife of a prosecutor impacted "the validity of the proceeding." *Chambers v. Commonwealth*, No. 2007-CA-001484-MR, 2008 WL 1116905, at *2 (Ky. Ct. App. Apr. 11, 2008). The court held further that the grand-jury bias claim "could have been

reasonably investigated at a much earlier date." *Id.* It is unclear from the record whether Chambers appealed this decision to the Kentucky Supreme Court.

Chambers asserts the juror misconduct, grand-jury bias, and sentencing claims in his present motion. As to the allegations of juror misconduct, Chambers claims that, in a telephone conversation with a Mr. Donnie Tutt, Chambers's half-brother, which was recorded on April 28, 2007 and is the subject of his motion to expand the record, Chambers learned for the first time that, during his trial, two jurors discussed the case with non-jurors. Chambers submits an affidavit from Tutt in which Tutt states that he "personally heard CLAY DOOLEY, the Jury Foreman, say that Danny Chambers was nothing but trouble when Danny worked where Clay Dooley was the Supervisor for the drop-out program." Second § 2254 App. at 2 (Tutt Aff.). Chambers also claims that Tutt overheard a juror and a non-juror discussing Chambers and the trial before the verdict was rendered. Tutt states in his affidavit that, "Linda Tipton told Carol Mattingly that she (Linda) didn't know what to do about the murder trial. Carol then told Linda that she (Linda) needed to give Danny some time because of what Danny had done and because Danny went around threatening people with guns" and "because all Danny did was lay around drinking and stuff." *Id.* at 2-3. The otherwise-typed affidavit includes a handwritten notation, initialed "DT," which states, "Not sure of all this[.] I heard some of this[.] It has been years since all of this[.]" *Id.* at 2. Although not included in Tutt's affidavit, Chambers asserts that Tutt was also present when, before the trial, Mattingly told Tipton that Chambers had raped Mattingly in the past, and that, in light of this conversation, Tipton should not have been on the jury.

4

As to Chambers's allegations of grand-jury bias, Chambers asserts that, when Chambers was indicted, the grand-jury foreperson, Elizabeth Hollon, was married to Tom Hollon, one of the prosecutors in his case. In support of this claim, Chambers submits the grand-jury indictment, dated November 23, 1992, which includes the signature of Elizabeth Hollon as grand-jury foreperson, and pages from the Lee Circuit Court docket listing the involvement of Tom Hollon as a special prosecutor in pre-trial matters in March, April, and May of 1993. Chambers claims that he did not learn of the relationship until 2007 when he was shown a newspaper photograph of Tom and Elizabeth Hollon. Chambers also submits the undated newspaper photograph and an affidavit from Phillip Lanham stating that he is Tom Hollon's second cousin and that the individuals in the photograph are Tom Hollon and his wife, Elizabeth.

Lastly, Chambers claims that the trial court did not have jurisdiction to sentence Chambers after the jury deadlocked at the penalty phase, and that the trial court "relied on the wrong state statute" to sentence him. Second § 2254 Pet. at 25. Chambers asserts that, after the first jury was unable to agree on a penalty, the trial court "was required by law to empanel another jury to conduct another penalty phase trial for the purpose of sentencing the Petitioner." *Id.* at 26. According to Chambers, in a capital case, a trial court in Kentucky cannot sentence a defendant unless a jury has sentenced the defendant.

## II. SECOND OR SUCCESSIVE HABEAS APPLICATION

We cannot authorize the filing of a second or successive habeas corpus application unless we determine that Chambers has made a prima facie showing that his claims meet the requirements

of 28 U.S.C. § 2244(b). Chambers did not raise the claims in the instant motion in his first § 2254

petition. A claim not presented in a prior application must be dismissed unless:

(A)     the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)

    (i)     the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

    (ii)     the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b)(2). Although Chambers's allegations of juror misconduct and grand-jury bias

are troubling, we must deny Chambers's § 2244 motion because his claims do not meet the stringent

§ 2244(b)(2) requirements. First, none of Chambers's claims "rel[y] on a new rule of constitutional

law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C.

§ 2244(b)(2)(A). Second, Chambers does not allege facts that were not previously discoverable

through due diligence, and that "establish by clear and convincing evidence that, but for

constitutional error, no reasonable factfinder would have found [Chambers] guilty." 28 U.S.C.

§ 2244(b)(2)(B).

      With respect to his claims of juror misconduct and grand-jury bias, Chambers does not rely

on any newly applicable rule of constitutional law, and he fails to meet the § 2244(b)(2)(B) criteria

for new evidence. Although Chambers asserts that he did not have personal knowledge of the

alleged juror misconduct, Chambers does not explain why he could not have discovered the misconduct earlier through due diligence. Moreover, even if Chambers could make such a showing, he fails to demonstrate that, but for the misconduct, no reasonable factfinder would have found him guilty of murder. In spite of their impropriety, the alleged juror conversations do not bear upon Chambers's guilt or innocence.

Chambers's allegations of grand-jury bias suffer from the same defects. In light of Elizabeth Hollon's signature on the indictment, it is unclear why Chambers could not have discovered previously the names and relationship of the grand-jury foreperson and the prosecutor. Nor does Chambers show how the involvement of Elizabeth Hollon in the grand-jury proceedings casts doubt on his guilt as proven at trial. A marital relationship between a member of the grand jury and a prosecutor does raise concerns about the fairness of the grand-jury proceedings against Chambers. However, in the instant motion, Chambers does not present evidence that would prevent any rational factfinder from finding him guilty, as required by § 2244(b)(2)(B)(ii).[1]

With respect to his claim of sentencing error, Chambers does not present any new evidence. Nor does he rely on a previously unavailable rule of constitutional law, made retroactively applicable to cases on collateral review by the United States Supreme Court.[2] Under Kentucky law, if a jury

---

[1]We also note that, according to the trial-court docket, Tom Hollon was appointed as a special prosecutor on or around March 26, 1993 for a pre-trial hearing held in May 1993. These are the only listings on the docket sheet submitted by Chambers noting Hollon's involvement in Chambers's case.

[2]Chambers claims that the Kentucky Supreme Court held unconstitutional Ky. Rev. Stat. § 532.055, the provision under which the trial court had authority to impose sentence in the event

in a felony case is unable to agree on a sentence, "the judge shall impose the sentence within the range provided elsewhere by law." Ky. Rev. Stat. § 532.055(4) (1990). Five years after Chambers's conviction became final, and two years after Chambers filed his first habeas petition, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). We first note that the Supreme Court has not held that *Apprendi* applies retroactively to cases on collateral review. *See In re Nailor*, 487 F.3d 1018, 1023 (6th Cir. 2007).[3] But, in any event, Chambers objects to the imposition of life imprisonment, which did not require additional factfinding to be imposed by the trial court. Kentucky Revised Statute § 532.025(3) provides that "the death penalty, or imprisonment for life *without benefit of probation or parole until the defendant has served a minimum of twenty-five (25) years of his sentence*" may not be imposed unless a "statutory aggravating circumstance[] . . . is so found." Ky. Rev. Stat. § 532.025(3) (1990) (emphasis added). Chambers objects to his sentence of life imprisonment, which was not for life without benefit of

---

of jury deadlock. However, only one provision, Ky. Rev. Stat. § 532.055(2)(a)(6), which permits impeachment by use of a juvenile adjudication, was held unconstitutional, and, moreover, it was held by the Kentucky Supreme Court to violate the Constitution of the Commonwealth of Kentucky, not by the United States Supreme Court to violate the United States Constitution. *Manns v. Commonwealth*, 80 S.W.3d 439, 445-46 (Ky. 2002).

[3]In the death-penalty context, the Supreme Court applied *Apprendi* to hold that a jury must find the aggravating factors necessary for the imposition of the death penalty. *Ring v. Arizona*, 536 U.S. 584, 609 (2002). But Chambers did not receive a capital sentence, and *Ring* "does not apply retroactively to cases already final on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004).

probation or parole for twenty-five years, and which, accordingly, requires no finding of an additional aggravating circumstance.  Thus, Chambers's sentence was within the power of the trial court to impose without a jury.

### III.  CONCLUSION

Because Chambers has not met the requirements of 28 U.S.C. § 2244(b), we **DENY** Chambers's motion for authorization to file a second or successive 28 U.S.C. § 2254 petition in the district court.  Accordingly, we also **DENY** as moot Chambers's motion to expand the record.